UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 18-47-CJS

JAMIE L. CLEVENGER                                                                    PLAINTIFF

v.                          **MEMORANDUM OPINION AND ORDER**

ANDREW SAUL, Commissioner[1]
**Social Security Administration**                                                    DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Plaintiff Jamie L. Clevenger brings this action under 42 U.S.C. § 405(g), challenging Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act. The parties have consented to the undersigned's authority to adjudicate this action pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* R. 14). At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" within the meaning of the Social Security Act and therefore not entitled to benefits. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will **affirm** the Commissioner's decision.

I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied correct legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 423(a)(1). Substantial evidence means "more than

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019, during the pendency of this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Saul is automatically substituted as a party.

1

a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 229 (1938)). A reviewing court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbot v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that he is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate that he suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education, or work experience. *Id*. (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, if the impairment does not meet or equal a listed impairment, the claimant must show his impairment prevents him from doing his past relevant work. *Id*. Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work that exists in the national economy. *Id*. (citing *Abbot*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the

claimant can perform other work existing in the national economy. *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

II.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Jamie Clevenger was 50 years old at the time of the ALJ's November 21, 2017 decision. Plaintiff completed the eleventh grade and has training for and worked in the past as a plumber. (*See* Administrative Record (A.R.) at 20, 192). Plaintiff alleged disability due to physical impairments, including high blood pressure, high cholesterol, type 2 diabetes, neuropathy or peripheral neuropathy of the lower extremities, obesity, sleep apnea, and diabetic retinopathy. (*Id*.).

Plaintiff filed an application for Disability Insurance Benefits on September 4, 2015, alleging disability onset as of April 1, 2015. (*Id*. at 172). The application was denied initially on January 22, 2016, and again upon reconsideration on April 21, 2016. (*Id*. at 81, 91). Plaintiff appeared and testified at an administrative hearing before ALJ Thuy-Anh Nguyen on October 12, 2017. (*Id*. at 29). The ALJ also heard testimony from an impartial vocational expert. (*Id*. at 42). After receiving testimony and reviewing the record, the ALJ issued a written decision on November 21, 2017, finding Plaintiff not disabled under the Social Security Act and therefore not entitled to benefits. (*Id*. at 22).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id*. 13-21). *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 1, 2015, the alleged onset date of Plaintiff's disabilities. (*Id*. at 14) (citing 20 C.F.R. § 404.1571 *et seq.*). At step two, the ALJ found that Plaintiff's severe impairments consisted of diabetes mellitus, peripheral neuropathy, obesity, obstructive sleep apnea, and depressive disorder. (*Id*.) (citing 20 C.F.R. § 404.1520(c)). At step

three, the ALJ analyzed the Plaintiff's impairments and the opinions of treating and examining physicians and found that Plaintiff did not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. at 15-16).

Before moving on to step four, the ALJ considered the entire record and determined that Plaintiff Clevenger possessed the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following restrictions:

> [Plaintiff] is further limited to occasionally balancing, stooping, kneeling, crouching, crawling, or climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; performing jobs on flat, level ground; frequently operating foot pedals bilaterally, frequently handling, fingering, or feeling bilaterally; avoiding concentrated exposure to unprotected heights, dangerous machinery, extreme cold, and extreme heat; completing simple tasks that do not require a strict production quota or a fast pace; frequently interacting with others; adapting to occasional changes in a workplace; and performing positions that permit him to be off task 5% of a workday.

(*Id*. at 16).

It was at this step that the ALJ reviewed the mental capacities of Plaintiff. (*Id*. at 16-20). This review included the opinions of two psychologists: Dr. McKinney, a consultative examiner, and Dr. Tishler, a state agency consultant. (*Id*. at 19). The ALJ gave the opinion of Dr. McKinney partial weight and gave the opinion of Dr. Tishler little weight, citing a lack of support in actual clinical findings and the record. (*Id.*).

At step four, the ALJ found, both based on the *Dictionary of Occupational Titles* and the testimony of a vocational expert, that Plaintiff could not perform his past work as a plumber. (*Id*. at 20). The ALJ then proceeded to step five and adopted the vocational expert's opinion that given an individual of Plaintiff's age, education, work experience, and residual functional capacity, there are available jobs classified as light, unskilled occupations such as protective clothing issuer, bus

monitor, and weights/measure checker clerk. (*Id*. at 21). Accordingly, the ALJ concluded that Plaintiff was not "disabled" within the meaning of the Social Security Act. (*Id*.).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council and the Appeals Council denied Plaintiff's request for review. (*Id*. at 1). Since the Appeal's Council declined to review, the ALJ's opinion serves as the Commissioner's final decision. Accordingly, on March 27, 2018, having exhausted his administrative remedies, Plaintiff timely filed his Complaint asserting the ALJ's decision was contrary to law and seeking judicial review in this Court. (R. 2). On October 22, 2018, Plaintiff filed a motion for Judgment on the Pleadings. (R. 18). In response, Defendant filed a Motion for Summary Judgment on November 1, 2018. (R. 20). The matter is ripe for review on the parties' dispositive motions.

## III. ANALYSIS

The question in this appeal comes down to the opinions of the two consultative psychologists, Drs. McKinney and Tishler. In the Sixth Circuit, failing to incorporate mental impairments into the residual functional capacity creates a decision not supported by substantial evidence. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009). A "denial of benefits based upon an ALJ's improper calculation of a claimant's residual functional capacity . . . must be reversed." *Web v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (citing *Howard v. Comm'r of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002)). This is because the residual functional capacity informs the hypothetical questions given to the vocational expert. If the hypothetical questions do not accurately portray Plaintiff's physical and mental state, "the vocational expert's testimony in response to the hypothetical questions may not serve as substantial evidence in support of the ALJ's findings that Plaintiff could perform other work." *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007).

5

Using these guidelines by the Sixth Circuit Court of Appeals, if the ALJ here erroneously gave less weight to the mental medical source opinions, then the residual functional capacity, and therefore the step 5 findings based on it, must be void. Plaintiff argues the ALJ's residual functional capacity is invalid because it did not have the support of a medical opinion concerning mental impairments; that the ALJ gave inappropriately little weight to the opinions of the two psychologist consultants, and that the ALJ did not present the correct residual functional capacity to the vocational expert because the ALJ cherry-picked which evidence to present.

> **A. The ALJ did not improperly discount all of the mental health opinions of record because the ALJ gave consideration and weight to the opinions at issue and incorporated those findings into the hypothetical questions asked of the vocational expert.**

Plaintiff's contention in this case is that the ALJ improperly discounted medical opinion evidence of record. By disregarding the medical opinion evidence of record, Plaintiff claims that the ALJ "decided to play doctor." (R. 18-1 at 8). What Plaintiff classifies as disregarding the medical opinions of record is giving inappropriate weight to the opinions of Drs. McKinney and Tishler, and that this inappropriate weight resulted in an election "to ignore the only RFC analysis of Plaintiff's mental capabilities." (*Id*. at 7-8).

In support of this contention, Plaintiff relies on general Sixth Circuit legal standards about the role of ALJs, as well as a plethora of cases from other district courts. Plaintiff cites to the Sixth Circuit to present the warning that an ALJ may not "succumb to the temptation to play doctor and make their own independent factual findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009). Then, to make the argument that the ALJ in this case played doctor, Plaintiff highlights many other cases in other districts that appear to state that an ALJ must obtain a medical expert opinion when creating a residual functional capacity because ALJs are not qualified to

6

interpret raw medical data, and cannot craft a residual functioning capacity without the assistance of medical opinions on the record. (R. 18-1 at 7).

The ALJ, however, did not disregard the two psychological opinions, but adjusted the residual functional capacity to reflect their findings. The residual functional capacity incorporated the opinion of Dr. McKinney by incorporating that Plaintiff is limited to completing simple tasks that do not require a strict production quota or fast pace, frequently interacting with others, adapting to occasional changes in the workplace, and performing positions that enable him to be off task for 5% of the workday. (A.R. at 16).

What this case turns on is not a rule appropriated piecemeal from other districts about residual functional capacities needing at least one medical opinion to support it, but whether the weight the ALJ gave to Dr. McKinney and Dr. Tishler's opinions, in light of the Code of Federal Regulations and the holdings of the Sixth Circuit, is appropriate.

> **B.  The ALJ did not err when giving Dr. McKinney's opinions partial weight and Dr. Tishler's opinions little weight when determining Plaintiff's residual functional capacity.**

The Code of Federal Regulations outlines how the Social Security Administration considers and articulates medical opinions. *See* 20 C.F.R. § 404.1527. The Social Security Administration looks at certain factors in considering the weight given to any medical opinion. 20 C.F.R. § 404.1527(c). The six factors used in determining the weight of a medical opinion are examining relationship, treatment relationship, supportability, consistency, specialization, and other factors. *Id*.

It is the ALJ, not a physician, that ultimately determines a claimant's residual functional capacity. *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for

capacity-to-work determinations belongs to the Commissioner.") The Sixth Circuit has recognized that, under the Social Security regulations, "The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). In other words, the ALJ is charged with evaluating all of the evidence in the record and synthesizing it into a concise residual functioning capacity. It is not necessary for the residual functioning capacity to reflect any specific medical opinion in the record, and the ALJ "does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x 435, 439 (6th Cir. 2010).

An ALJ must give "good reasons" for not according controlling weight to a treating physician's opinion. *Id.* at 439 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). The weight of a consultative opinion is given less weight, and an ALJ does not need to use the good reason standard when examining it. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). When determining how much weight to assign the opinion of a non-treating source, there needs to be an examination of the factors as outlined on the Code of Federal Regulations, such as how consistent the opinion is with the record as a whole. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(c)). Non-treating examining sources are given more weight than non-treating non-examining sources. *Id*. The ALJ's treatment of both consulting psychologists will be examined in turn.

1. **Dr. McKinney**

The ALJ examined Dr. McKinney's opinions under the umbrella of the correct legal standard, and appropriately identified facts in the record, both non-medical and the opinions of

other physicians, and found that only partial weight should be given. The ALJ found that mental status examinations were normal at Plaintiff's treatment sessions for physical complaints. (A.R. 18). By comparing the opinions of Dr. McKinney to the "actual clinical findings and the longitudinal record," the ALJ granted only partial weight to the opinions.

In examining the Plaintiff, Dr. McKinney reported that Plaintiff's attention and concentration skills were not strong, and that they may deteriorate over extended periods of time. (A.R. 272). Dr. McKinney also noted, among other things, that Plaintiff's exposure to day-to-day work stress could lead to increased depressive symptomology such as crying, withdrawal, slow work performance, and poor frustration tolerance. (A.R. 274). Dr. McKinney was also of the opinion that Plaintiff's remote recall skills were adequate but that his short-term memory skills were not strong. (A.R. 273).

In support of the finding that Dr. McKinney's opinions should only be given partial weight, the ALJ pointed to the reports by the treating physician, which show a long history of a lack of mental impairments. (A.R. 18). Specifically, the treating physician noted no mental impairments over the months of seeing Plaintiff. (*See* A.R. 283, 292, 399-300, 304-05, 313, 316-17). The ALJ also based the decision on the "actual clinical findings," which the ALJ characterized by saying that in April 2013, Dr. McKinney examined Plaintiff and "observed no abnormalities of mental content, affect was appropriate, there were no automatic motoric indications of anxiety, the claimant was fully oriented, and judgment was sufficient for him to make decisions affecting his future and to conduct his own living arrangements efficiently." (A.R. 18) (citing A.R. 269-274).

The actual clinical findings which support Dr. McKinney's opinions, and an administrative record which offers no additional support, go to both the supportability and consistency of the medical opinions. The fact that it was a consultative exam lacking any regular schedule with the

9

Plaintiff speaks to the lack of a treatment relationship. The governing standard for review when reviewing a decision by the ALJ is substantial evidence. *See Richardson*, 402 U.S. at 401. Substantial evidence is that a reasonable mind would accept the relevant evidence as adequate to support a conclusion. *Longworth*, 402 F.3d at 591. Here, a reasonable mind would accept the evidence relied upon by the ALJ in reaching the determination as adequate to support the conclusion. The decision of the ALJ to afford Dr. McKinney only partial weight falls within the "zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

### 2. Dr. Tishler

Dr. Tishler, a state-agency psychological consultant, gave a non-examining medical opinion based largely on the examination of Dr. McKinney. (A.R. 19). He found that Plaintiff would be moderately limited in his abilities to: maintain attention and concentration for extended periods, complete a normal workday/week without interruptions from psychologically based symptoms, interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness such that he could only interact superficially with others, and perform at a consistent pace without an unreasonable number and length of rest periods such that he would be able to complete simple and complex tasks that do not require a strict production quota or fast pace. (A.R. 73-4). Dr. Tishler also opined that Plaintiff would have moderate limitations in responding appropriately to changes in the work setting such that he would require changes to be infrequent. (A.R. 74).

The ALJ's examination of Dr. Tishler's medical opinions is similar to the treatment of Dr. McKinney's opinions. The ALJ, upon examining the record, found that there was no evidence on

record indicating that Plaintiff could handle only superficial interactions with others or infrequent work changes. (A.R. 19). The ALJ also viewed the same evidence used in Dr. McKinney's assessment, namely the consistency of regular normal mental status examinations. ALJs "need not give reasons for discounting non-treating source opinions." *Lawson v. Berryhill*, No. 6:18-CV-175-DCR, 2018 WL 6257105 (E.D. Ky. Nov. 29, 2018) (citing *Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016)). Based on the lower weight given to consultative, non-examining physicians, and that the ALJ viewed the whole record, the decision to give Dr. Tishler's medical opinions "little weight" falls under the umbrella of a decision resting on substantial evidence.

    **C.    The ALJ did not pick and choose the record to present to the vocational expert in a way that invalidated the finding.**

Plaintiff also makes the contention that the ALJ erred by not presenting the severe mental restrictions detailed by Drs. McKinney and Tishler. (R. 18-1 at 10). Plaintiff cites to the Sixth Circuit for the rule that "[i]n order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239, 241 (6th Cir. 2002)). Plaintiff also argues that the ALJ left out part of Dr. McKinney's finding about limitations suffered by Plaintiff, namely "crying, withdraw, slow work performance, and poor frustration tolerance." (R. 18-1 at 11). Plaintiff then goes on to cite Social Security Regulation 85-15, quoting that "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." The conclusion of the argument is that because the credible mental health limitations of record were

not presented to the vocational expert, the VE's opinion cannot serve as evidence in support of the ALJ's ultimate finding. (*Id.*).

The Sixth Circuit has recognized, under the Social Security regulations, that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). In other words, the ALJ is charged with evaluating all of the evidence in the record and synthesizing it into a concise residual functional capacity. It is not necessary for the residual functional capacity to reflect any specific medical opinion in the record, and the ALJ "does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).

The aforementioned weighing by the ALJ of Dr. McKinney's medical opinions is enough to satisfy the substantial evidence standard of review. The ALJ accounted for Dr. McKinney's opinions by incorporating mental health limitations in the residual functional capacity. Specifically, saying that Plaintiff is limited to "completing simple tasks that do not require a strict production quota or a fast pace; frequently interacting with others; adapting to occasional changes in a workplace; and performing positions that permit him to be off task 5% of a workday." (A.R. 16). To require any more from the ALJ would be an impermissible call for the Court to reweigh the evidence. *See Ulman*, 693 F.3d at 714. The decision of the ALJ in this case falls within that substantial evidence zone which the Court cannot intrude.

## IV.  CONCLUSION

For the reasons stated herein, Plaintiff's arguments lack merit, and the ALJ's decision is supported by substantial evidence. Accordingly, **IT IS ORDERED** as follows:

1) The decision of the Commissioner is found the be supported by substantial evidence and is hereby **AFFIRMED**;

2) Plaintiff's Motion for Judgment on the Administrative Record and Pleadings Pursuant to Fed. R. Civ. P. 12(c) (R. 18) is hereby **DENIED**;

3) Defendant Commissioner's Motion for Summary Judgment (R. 20) is hereby **GRANTED**; and

4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 30th day of September, 2019.

Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\social security\Orders\Clevenger v. SSA 18-47.docx